## APPEAL OF THEODORE H. SMITH.

Docket No. 1054.   Promulgated November 11, 1927.

*Francis J. Batchelder, C. P. A.*, for the petitioner.
*Arthur H. Fast, Esq.*, for the Commissioner.

OPINION.

MORRIS: Petitioner alleges error on the part of the respondent in disallowing as a deduction in the computation of his taxes for the years 1917, 1918, and 1919 the amounts of $24,980, $22,236.26, and $18,901.06, respectively, representing premium discounts sustained by petitioner in the marine insurance transactions hereinbefore discussed, and, further, in deducting from dividends received from the Atlantic the sums of $24,980, and $22,236.26 and holding that said amounts · were not dividends but were a return of capital invested. While the petitioner contends that the figure of $24,980 above referred to is excessive to the extent of $2,440.40, no satisfactory explanation has been advanced which would warrant our making any change. It is true the petitioner's witness, an expert accountant, testified as to what the books contained, but he has not shown us by his testimony why the book figures should be changed.

For reasons which will be made apparent by this opinion, these marine policies purchased by petitioner from the Atlantic must be separated into two classes: (1) policies purchased in the name of the petitioner and resold by him to his clients, and (2) policies purchased by the petitioner for and in the name of his clients.

With respect to the policies of insurance purchased by the petitioner from the Atlantic in his name for resale to his clients we confess that we can see no difference between such purchases and sales and the ordinary purchases and sales of any other assets or commodities. By purchasing this insurance in his own name the petitioner thereby became a policy holder of the Atlantic and as such, enjoyed all of the rights and privileges appertaining thereto, which included voting. He purchased this insurance for the express purpose of reselling it and it is clear to us that he must have regarded the amount of the premium collected from his clients plus what he would receive from the Atlantic by way of certificates of profit as the sale price. Therefore the insurance premiums paid by the petitioner upon policies issued to himself represented the cost of such insurance purchased for resale and upon such resale the profit derived or the loss sustained is the difference between the premiums paid by petitioner to the Atlantic and the amounts received from clients plus the certificates of profit from the Atlantic. Said profit or loss should be reported in the year in which the certificates of profit are received. As the certificates had a market value of 90 to 95 per cent during the taxable years in question, the amount of

the profit or loss should be determined by including the certificates at 95 per cent of their face value if the petitioner's books are kept on the cash receipts and disbursements basis, or at their face value if his accounts are on the accrual basis.

The circumstances surrounding the insurance purchased by petitioner for William E. Peck & Co., Inc., and the Bull Insular Line are, we believe, entirely different. In these cases the petitioner was not in the relation of principal and client, as in those cases where he purchased insurance in his own name for resale, but was acting in his usual capacity as insurance agent negotiating insurance for and in the name of his client. As such agent or broker, he procured the policies for those two companies.

With respect to the peculiar arrangement for the payment of premiums on those policies, it might safely be said that the petitioner acted the same as any other insurance agent might have acted under the same or similar circumstances. Petitioner was confronted with the necessity of satisfying the needs of his clients, and for failure to do so, might have found himself losing some or all of the other business brought to him by his clients, and being so circumstanced, he in effect said: " I will arrange the insurance which you want and will pay the premium demanded by the Atlantic and I will look to you for reimbursement in part and to the dividends declared by the Atlantic for the remainder." This indeed, as the petitioner admits, was a wise course to pursue even though he might have sustained a loss on the transaction. The amounts of premiums so advanced by the petitioner were advancements with the expectation of being reimbursed by his clients through the receipt of certificates of profit, and when such certificates of profit were declared and either assigned to or issued directly to the petitioner, although they might be dividend income in the hands of William E. Peck & Co., Inc., and the Bull Insular Line, they lost their identity as such when they were received by the petitioner, and were then nothing more than reimbursement of monies advanced by an agent for the account of his client. To the extent that an amount received by petitioner was more or less than the amount advanced by him, he realized a profit or sustained a deductible loss which profit or loss should be included in the computation of net income for the year in which the certificates of profit were received by the petitioner. In the computation of said profit or loss the certificates of profit should be included at 95 per cent of their face value if the petitioner's accounts are on the cash basis or at their face value, if on the accrual basis.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*

TRUSSELL dissents.